

U.S. Department of Justice

*United States Attorney
Southern District of New York*

*The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007*

March 16, 2023

**BY ECF**
The Honorable John P. Cronan
United States District Judge
500 Pearl Street
New York, New York 10007

  Re:  *United States v. Edwin Acevedo*, 22 Cr. 150 (JPC)

Dear Judge Cronan:

  The Government respectfully submits this letter in advance of sentencing. A sentence within the stipulated Guidelines range of 77 to 188 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

## I. OFFENSE CONDUCT

  From May 2020 to March 2022, law enforcement officers investigated a drug trafficking organization (the "DTO") that operated in the vicinity of Belmont Avenue and East Tremont Avenue in the Bronx. The DTO sold cocaine, cocaine base, and what it marketed as heroin (the "dope" sold by the DTO often contained fentanyl). During the course of controlled purchases by law enforcement, members of the DTO sold approximately 53 grams of fentanyl and approximately 48 grams of cocaine base. (PSR ¶ 14).

  The defendant was involved with the DTO's activities starting at the latest in September 2021, when law enforcement began making controlled purchases from the defendant. During the course of the investigation, law enforcement engaged the defendant in at least seven controlled purchases, buying over fourteen grams of fentanyl and over five grams of cocaine base from the defendant alone. (PSR ¶ 16).

  The defendant worked with others in the DTO. For example, during a September 9, 2021 controlled purchase, after the defendant sold cocaine base to a confidential source acting at the direction of law enforcement (the "CS"), the CS told the defendant that the CS wanted additional cocaine base, and, in response, the defendant called codefendant Andre Delacruz, who arrived and sold additional cocaine base to the CS. Similarly, during a November 10, 2021 controlled purchase, after codefendant Jadakis Mitchell was unable to supply the CS with as much dope as the CS asked for, Mitchell approached the defendant, who sold the CS a substance that tested positive for, among other things, fentanyl and heroin. Later on November 10, 2021, the CS bought additional narcotics from codefendant Daniel Peralta, who referred to the defendant and Mitchell as Daniel Peralta's "workers." During a December 2, 2021 controlled purchase, the defendant told the CS, in substance and in part, that the defendant sometimes supplied dope to codefendant

Manuel Peralta, and that Manuel Peralta sometimes supplied cocaine base to the defendant. (PSR ¶ 17).

On March 14, 2022, when law enforcement officers approached the wheelchair-bound defendant to effect his arrest in front of his building, he attempted to wheel away from them. Officers searched the defendant's bedroom pursuant to a warrant and recovered approximately 199 small glassines of a substance that tested positive for fentanyl. (PSR ¶ 18).

## II. GUILTY PLEA AND GUIDELINES RANGE

The defendant was charged both with conspiring to distribute and possess with intent to distribute 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B) ("Count One"), and with conspiring to distribute and possess with intent to distribute 28 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B) ("Count Two"). (PSR ¶¶ 2-3).

On November 2, 2022, the defendant pled guilty to the lesser-included offense under Count One of conspiring to distribute and possess with intent to distribute a quantity of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(C). (PSR ¶¶ 6, 145).

The plea agreement stipulated that, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(8), because the offense involved more than 40 grams but less than 160 grams of fentanyl, the base offense level was 24. The plea agreement contained a "carveout" on whether the defendant was a career offender under the Guidelines given a disagreement over whether the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, were controlled substance offenses under the Guidelines. After the reduction for acceptance of responsibility, the plea agreement stipulated that, if the defendant were not a career offender, then the offense level was 21, and, if the defendant were a career offender, then the offense level was 29. The plea agreement calculated 21 criminal history points for the defendant, placing him in Criminal History Category VI regardless of whether he were a career offender. Accordingly, the plea agreement calculated a Guidelines range of 77 to 96 months if the defendant were not a career offender, and 151 to 188 months if he were a career offender, thus stipulating a Guidelines range of 77 to 188 months. (PSR ¶ 7).[1]

The PSR, like the plea agreement, calculated a base offense level of 24. (PSR ¶ 41).[2] The PSR took the position that, in light of *United States v. Gibson*, 55 F.4th 153 (2d Cir. 2022), *adhered*

---

[1] In the plea agreement, the defendant admitted the forfeiture allegation. (PSR ¶ 7). At the sentencing, the parties will hand up a fully executed version of the consent forfeiture order that is attached hereto as Exhibit A in partially executed form.

[2] Unlike the plea agreement, which inadvertently omitted from its calculation of the base offense level the trafficking of cocaine base that was relevant conduct under the Guidelines, the PSR

*to on reh'g*, 60 F.4th 720 (2d Cir. 2023), the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, were not controlled substance offenses under the Guidelines, and thus that the defendant was not a career offender under the Guidelines. (PSR p. 33). After the reduction for acceptance of responsibility, the PSR calculated an offense level of 21. (PSR ¶ 50). The PSR calculated 27 criminal history points for the defendant, placing him in Criminal History Category VI. (PSR ¶ 90).[3] Accordingly, the PSR calculated a Guidelines range of 77 to 96 months. Probation recommended a below-Guidelines sentence of 72 months' imprisonment. (PSR p. 37).

The defense argued that, in light of *Gibson*, the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, were not controlled substance offenses under the Guidelines, and thus that the defendant was not a career offender under the Guidelines. (Dkt. 108 at 16-17). Accordingly, the defense calculated a Guidelines range of 77 to 96 months. (Dkt. 108 at 3). The defense requested a below-Guidelines sentence of 37 months. (Dkt. 108 at 1).

In the Government's view, notwithstanding *Gibson*, the defendant's convictions for criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39, are controlled substance offenses under the Guidelines, and thus the defendant is a career offender under the Guidelines. In *Gibson*, the Second Circuit concluded that the federal controlled substances schedules are categorically narrower than the New York state drug schedules because the federal schedules do not include naloxegol. 55 F.4th at 166. And in the *Gibson* rehearing opinion, the Second Circuit rejected the view that that conclusion was merely dictum rather than holding. 60 F.4th 720 (Mem.). But, in the Government's view, that conclusion, even if holding rather than dictum, is simply law of the case and is not precedential more broadly. That is because, in *Gibson*, the Government did not contest that the federal schedules' omission of naloxegol rendered the federal schedules narrower than the state schedules. *See* 55 F.4th at 158-59. Absent binding precedent to the contrary, this Court is free to conclude that the federal controlled substances schedules are *not* categorically narrower than the New York state drug schedules, notwithstanding the federal schedules' omission of naloxegol. The Government urges the Court to reach that conclusion for the reasons set forth in the Government's January 4, 2023 sentencing submission in *United States v. Forde*, 20 Cr. 557 (AT), Dkt. 72 at 8-11.[4] Accordingly,

---

properly included in its calculation of the base offense level the weight of that cocaine base. (PSR ¶ 7 n.1; PSR ¶ 41). That difference in approach, however, did not result in a different offense level.

[3] The plea agreement calculated 21 criminal history points as opposed to 27 criminal history points because, until the Government received the PSR, the Government did not have available to it the criminal history information set forth in the PSR. (*See* PSR ¶ 146). Under either calculation, however, the defendant was in Criminal History Category VI. (PSR ¶ 146).

[4] That said, the Government is aware that in other cases this Court has concluded that the federal controlled substances schedules are categorically narrower than the New York state drug schedules for a separate reason: Because this Court has determined that the federal schedules omit certain

because, in the Government's view, the defendant is a career offender under the Guidelines, the Government calculates a Guidelines range of 151 to 188 months, but the Government adheres to the plea agreement's stipulated Guidelines range of 77 to 188 months. The Government recommends a sentence within that stipulated Guidelines range.

## III. DISCUSSION

In this case, the combination of the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, weighs in favor of a substantial sentence.

A substantial sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. Over the course of several months, the defendant worked with others to distribute dangerous drugs in the Bronx, including at least 53 grams of fentanyl, a notoriously dangerous substance.

> Fentanyl is now the leading cause of death for Americans ages 18 to 49, according to a [Washington] Post analysis. . . . The American fentanyl crisis deepened during the coronavirus pandemic. From 2019 to 2021, fatal overdoses surged 94 percent, and an estimated 196 Americans are now dying each day from the drug—the equivalent of a fully loaded Boeing 757-200 crashing and killing everyone on board.

Miroff, et al., "Cause of death: Washington faltered as fentanyl gripped America," Washington Post (Dec. 12, 2022), available at https://www.washingtonpost.com/investigations/interactive/2022/dea-fentanyl-failure

A substantial sentence is also necessary given the history and characteristics of the defendant, to afford adequate deterrence to criminal conduct, both for the defendant specifically and for society generally, and to protect the public from further crimes of the defendant. As reflected in the PSR, the defendant's criminal history is extensive: 38 convictions, 6 of them felonies, 5 of those for drugs, plus 8 additional arrests. (PSR p. 36; PSR ¶¶ 51-89, 95-102). The defendant's longest prison term so far has been 60 months. (PSR p. 36). This Court has the opportunity to impose a sentence that may impact the defendant's future behavior or at least incapacitate him. As Probation put it: "Acevedo has [had] a plethora of convictions since he was a teenager, and it appears that prior sentences were not enough to deter him from . . . crime. As evidenced by the instant conviction, Acevedo's criminal activity continues to be significant, having distributed a substantial amount of potent and deadly substance[s]." (PSR p. 36). The defendant and others who engage in the trafficking of dangerous substances must understand that

---

isomers of cocaine that the state schedules include. *See, e.g.*, *United States v. Gutierrez-Campos*, No. 21 CR. 40 (JPC), 2022 WL 281582, at *14 (S.D.N.Y. Jan. 31, 2022). The Government respectfully disagrees with that conclusion, which is the subject of appeal.

their actions negatively impact our communities, and that those who perpetuate the drug problem in this Country will be punished appropriately.

The Government acknowledges the mitigating factors marshaled by both Probation and the defense—specifically, the defendant's significant addiction and mental health issues. (PSR p. 36; Dkt. 108 at 2-14). There is no dispute that the defendant needs to treat his addiction. The defendant's reported year of sobriety while detained on this case is a promising first step. For the reasons set forth above, however, the defense's requested sentence of 37 months' imprisonment would not be sufficient to serve the retributive, deterrent, and incapacitation purposes of sentencing. The defense arrived at that number by ignoring the defendant's decades of criminality and pretending that the defendant was in Criminal History Category I. (*See* Dkt. 108 at 3). Forty-six convictions and arrests are not so easily swept under the rug. Even if the defendant's prior crimes were the result of the defendant's addiction, they still represent an important part of the defendant's history and characteristics for the Court's consideration.

## IV. CONCLUSION

A sentence within the stipulated Guidelines range of 77 to 188 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: *Samuel P. Rothschild*
Samuel P. Rothschild
Assistant United States Attorney
(212) 637-2504

cc: Evan L. Lipton, Esq. (by ECF)